IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 05-cv-01168-EWN-CBS

GILBERT SANDOVAL,
        Plaintiff,
v.

RBC MORTGAGE COMPANY,
        Defendant.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on Defendant RBC Mortgage Company's

("RBC") Motion to Dismiss and Compel Arbitration, filed on October 6, 2005 (Doc. #13).  The

court received Gilbert Sandoval's ("Sandoval") Response to Defendant's Motion to Dismiss and

Compel Arbitration on October 28, 2005 (Doc. #19).  RBC filed a reply on November 9, 2005

(Doc. #20).  Pursuant to the Order of Reference dated July 29, 2005 (Doc. # 6), this matter is

referred to the Magistrate Judge to , *inter alia,* "[h]ear and determine any pretrial matter" and "to

submit to me proposed recommendations for my disposition of any motion . . . to dismiss the

entire action involuntarily."  The court has considered RBC's Motion, Sandoval's response, the

supplements, and the applicable law and is sufficiently advised in the premises.  For the reasons

set forth below, the court grants RBC's Motion to Dismiss and Compel Arbitration.

**BACKGROUND**

Sandoval's *pro se* Complaint, filed on June 23, 2005, seeks damages for discrimination

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  Sandoval's Complaint

provides few factual allegations; he contends RBC discriminated and retaliated against him with

regard to his training and employment based on his race.  Sandoval began his employment with RBC as a loan officer in the Mortgage Sales Department in the Denver Branch office on March 3, 2003.  (Szabo Decl. ¶ 6, Ex. B).  Sandoval's employment was terminated on November 4, 2003. (Szabo Decl. ¶ 6, Ex. B).  On March 22, 2004, Sandoval filed a charge of discrimination against RBC with the Colorado Division of Civil Rights and the Equal Employment Opportunity Commission ("EEOC").  (Szabo Decl. ¶ 4, Ex. A).  Upon investigation, the EEOC issued a determination that it was unable to conclude there was a violation of the relevant statutes. (Compl. Ex. 1).

RBC responded to Sandoval's Complaint by filing the present Motion to Dismiss and Compel Arbitration.  RBC alleges that Sandoval signed an Agreement which includes the terms and conditions of his employment.  (Defendant's Motion to Dismiss and Compel ¶ 3).  That Agreement expressly provides that any claims Sandoval may have against RBC are subject to a dispute resolution provision requiring arbitration.  (Defendant's Memorandum in Support of Its Motion to Dismiss and Compel ¶ 3).  The dispute resolution provision states that arbitration shall be resolved before a single arbitrator in Denver, Colorado, in accordance with the then-applicable provisions of the American Arbitrations Act.  (Defendant's Memorandum in Support of Its Motion to Dismiss and Compel Arbitration, Exhibit D).  The arbitrator's decision shall be final and binding on all parties to the Agreement.  (Exhibit D).

In response to RBC's Motion to Dismiss and Compel Arbitration, Sandoval argues that RBC failed to enforce the dispute resolution provision within the appropriate time frame; specifically, after Sandoval filed his claim with the Colorado Division of Civil Rights and the EEOC.  (Plaintiff's Response to Defendant's Motion to Dismiss and Compel Arbitration ¶ 1-2).

Sandoval also contends that he should be excused from the dispute resolution provision because RBC is no longer in business in Colorado.  (Plaintiff's Response to Defendant's Motion to Dismiss and Compel Arbitration ¶ 3).  Sandoval further argues that the Agreement was a mandatory requirement of employment with RBC and the intended purpose of the agreement was to "silence loan officers regarding discrimination within the downtown office."  (Plaintiff's Response to Defendant's Motion to Dismiss and Compel Arbitration ¶ 3).  According to Sandoval, a previous employee who filed an employment discrimination and retaliation suit with the Civil Rights Department/EEOC prompted the requirement that loan officers sign the unconscionable Agreement.  (Plaintiff's Response to Defendant's Motion to Dismiss and Compel Arbitration ¶ 3).

### ANALYSIS

Motions to compel arbitration are governed by the Federal Arbitration Act ("FAA"), which provides:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement...

9 U.S.C. § 4.  *See also Spahr v. Secco*, 330 F.3d 1266, 1270 (10th Cir. 2003) ("[A] court may compel arbitration of a particular dispute under § 4 of the FAA only when satisfied that the 'making' of the agreement to arbitrate is not at issue").

Federal policies governing arbitration have established that contracts expressly providing arbitration provisions are enforceable.  In deciding whether there is an enforceable agreement to arbitrate, "courts generally...should apply ordinary state-law principles that govern formation of

3

contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). *See also*

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (contract defenses that

would otherwise be available under state common law may be asserted to invalidate arbitration

agreements).  However, the court's application of state law principles must also give "due

regard...to the federal policy favoring arbitration." *Volt Information Sciences, Inc. v. Board of*

*Trustees*, 489 U.S. 468, 475-76 (1989).   A court may refuse to enforce an arbitration agreement

where the non-moving party presents "well supported claims that the agreement to arbitrate

resulted from the sort of fraud or overwhelming economic power that would provide grounds" for

the revocation of that contract. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S.

627, 628 (1985).

> Where a party invokes a contractual arbitration clause, a presumption of arbitration arises

which may be

> overcome only if "it may be said with positive assurance that the arbitration clause is not
> susceptible of an interpretation that covers the asserted dispute."  All doubts should be
> resolved in favor of coverage.  Courts are to "rigorously" enforce agreements to arbitrate.

*ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (quoting *United Steel*

*Workers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).   In order

to resolve RBC's Motion to Dismiss and Compel Arbitration the court must determine: (1)

whether the Agreement to arbitrate is enforceable; and (2) whether the claims raised in the lawsuit

are encompassed by the agreement.

The Agreement according to its terms provides that "any controversy or claim between

the Employee and the Company...shall be resolved by arbitration."  (Defendant's Memorandum in

Support of Its' Motion to Dismiss and Compel Arbitration, Exhibit D).  Furthermore, the

Agreement states that "[t]his arbitration provision includes, by way of example, but is not limited to, the following types of claims: all other claims under federal, state or local statute or law regarding employment, such as discrimination claims..." (Exhibit D).  Any doubts concerning the scope of arbitrable issues, pursuant to the arbitration agreement, should be resolved in favor of arbitration.  *GATX Management Services, LLC v. Weakland,* 171 F.Supp.2d 1159, 1162 (D.Colo. 2001).

Sandoval does not deny executing the Agreement, but claims that the Agreement was a mandatory initiative in order to silence loan officers.  (Plaintiff's Response to Defendant's Motion to Dismiss and Compel Arbitration ¶ 3).  "A contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Ciago v. Ameriquest Mortgage Co.*, 295 F.Supp. 2d 324, 328 (S.D.N.Y. 2003) (internal quotation marks and citations omitted).  *See also McNally Wellman Co. v. New York Elec. & Gas Corp.*, 63 F.3d 1188, 1198 (2d Cir. 1995) (same). "Among the factors that courts consider in determining whether a provision is unconscionable is whether the provision is clear and conspicuous, whether the party agreeing to the term is experienced in the field, whether the party had a meaningful choice in accepting or rejecting the term, and whether it would be unreasonable to enforce the term as it exists."  *PACS Industries, Inc. v. Cutler-Hammer, Inc.*, 103 F.Supp.2d 570, 573 (E.D.N.Y. 2000) (citations omitted).

Here, Sandoval does not allege the absence of meaningful choice or indicate that the arbitration provision is unreasonably favorable to either party.  *See Ciago*, 295 F.Supp.2d at 328 ("A contract or clause is unconscionable when there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the

other party") (internal quotation marks and citation omitted).  Under the Agreement, both parties

to the transaction are required to arbitrate all non-exempt claims.  (Defendant's Memorandum in

Support of Its' Motion to Dismiss and Compel Arbitration, Exhibit D).  The arbitrator has the

authority to award any remedy or relief available under applicable law.  (Exhibit D).  Under the

Agreement, "each party shall be responsible for attorney's fees" and all "other costs and expenses

of any arbitration proceeding shall be paid by [RBC]."  (Exhibit D).  The arbitration provision is

both clear and conspicuous.  *See PACS Industries, Inc.*, 103 F.Supp.2d at 573 ("[a]mong the

factors that courts consider in determining whether a provision is unconscionable is whether the

provision is clear and conspicuous . . .").  The Agreement does not contain unconscionable

provisions, nor is it contrary to public policy.  The Agreement does not give RBC superior rights

or protections in the arbitral forum and provides Sandoval with an adequate avenue to determine

the legality of his claim.

Sandoval argues that his claim is not subject to arbitration because at the present time

RBC is no longer in business in Colorado.  The Agreement contains a forum selection clause,

which establishes that "Any controversy or claim between Employee and Company and/or any

employee or agent of Company shall be resolved by arbitration before a single arbitrator in

Denver, Colorado...."  (Exhibit D).  If an agreement contains a forum selection clause, only the

district court in that forum can issue an order compelling arbitration.  *Roe v. Gray*, 165 F.Supp.2d

1164, 1173 (D.Colo. 2001).  Therefore, the District of Colorado has the power to compel

arbitration in Colorado under the Agreement.  The location of RBC has no bearing on whether or

not RBC or Sandoval can enforce the contractual right to seek arbitration in Colorado.

Sandoval argues that RBC waived its right to arbitration by not promptly filing a Motion

to Dismiss and Compel Arbitration following the initial filing of the Complaint. Sandoval also

argues that RBC had an additional opportunity to request arbitration following the charge of

employment discrimination filed with the Colorado Civil Rights Department and the EEOC. An

employer does not waive its right to demand arbitration by failing to invoke arbitration prior to an

employee's filing of a lawsuit. *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir. 1998).

Six factors have been established to determine whether a party has waived its rights to enforce an

arbitration agreement. *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489

(10th Cir. 1994). The six factors identified in *Metz* are:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the
> litigation machinery has been substantially invoked" and the parties "were well into
> preparation of a lawsuit" before the party notified the opposing party of an intent to
> arbitrate; (3) whether a party either requested arbitration enforcement close to the trial
> date or delayed a long period before seeking a stay; (4) whether the defendant seeking
> arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether
> important intervening steps [e.g. taking advantage of judicial discovery procedures not
> available in arbitration] had taken place;" and (6) whether the delay "affected, misled, or
> prejudiced' the opposing party.

39 F.3d at 1489 (quoting *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467-68

(10th Cir. 1998)). Sandoval hasn't alleged any actions inconsistent with the right to arbitrate nor

has RBC requested arbitration enforcement close to trial. RBC properly invoked its right to

arbitrate at the outset of the lawsuit and there is no indication that a counterclaim has been filed.

Furthermore, important judicial steps have not commenced and Sandoval describes no prejudice.

## CONCLUSION

Consistent with the arbitration provisions applicable in this case, the court concludes that

the Title VII claim asserted in the Complaint encompasses the parties' Agreement and is subject

to arbitration. Accordingly, IT IS RECOMMENDED that Defendant's Motion to Dismiss and

Compel Arbitration (filed October 6, 2005) (doc. # 13) be GRANTED.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the

magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).

Dated at Denver, Colorado this 7th day of February 2006.

BY THE COURT:


*s/Craig B. Shaffer*
United States Magistrate Judge